IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

BRANDON W. DENNIS,

    *Defendant.*

Case No. 11-10250-EFM

**MEMORANDUM AND ORDER**

Defendant Brandon W. Dennis brought this Motion to Determine Competency (Doc. 18) pursuant to 18 U.S.C. § 4241(a). Defendant was examined by his own expert, who opined that Defendant is unable to understand the nature of the proceedings against him or assist properly in his own defense. Forensic psychologists at the Bureau of Prisons Federal Medical Center in Lexington, Kentucky evaluated Dennis and found him competent to stand trial. The Court held a hearing on the matter on August 16, 2012. After reviewing the reports, exhibits, and testimony regarding Dennis's mental state, the Court finds him to be competent to stand trial.

### I.  Factual and Procedural Background

On October 24, 2011, Dennis was indicted on two counts of sex trafficking of minors pursuant to 18 U.S.C. §§ 1591(a) and 1594(a). On December 29, 2011, Dennis's attorney brought a motion to determine Dennis's mental competency to stand trial pursuant to 18 U.S.C.

§ 4241(a). Dennis's attorney had arranged for Dennis to meet with licensed psychologist Dr. Ted Moeller while in custody, and it was Dr. Moeller's opinion that Dennis was incapable of understanding or assisting in the case against him because Dennis is mentally retarded[1] and suffers from attention deficit disorder. The Court ordered that Dennis be committed to the custody of the Attorney General for a psychological evaluation. Dennis was transferred to the Federal Medical Center in Lexington, Kentucky, where he was examined by Dr. Elizabeth Campbell and her intern, Mr. Neal Kimble. On May 23, 2012, the Court received Dr. Campbell's evaluation of Dennis, which found him to be competent to stand trial. The Court held a three-day hearing in August 2012 to determine Dennis's competency.

The three medical professionals in this case, Dr. Campbell, Mr. Kimble, and Dr. Moeller, agree on several conclusions regarding Dennis. First, the most pervasive description of all interactions with Dennis is that he was uncooperative. Dr. Moeller states that "[t]hroughout the three sessions of evaluation, Mr. Dennis was irritable and truculent."[2] Similarly, Dr. Campbell's report reflects that Dennis put forth "a lack of effort and what appeared to be an indifferent attitude about the current evaluation," and often expressed the sentiment that he did not care about the assessment.[3] In addition to notations of Dennis's incompliance, all three professionals agree that Dennis's scores on intelligence tests correspond with a diagnosis of mild mental retardation. Specifically, Dennis's scores on the Working Memory Index of the WAIS-IV indicate that he struggles with attention, memory, and concentration.

---

[1] Consistent with the current version of the Diagnostic and Statistical Manual of Mental Disorders, the DSM IV-TR, the Court will use the term "mental retardation" to refer to intellectual functioning that falls below average levels. The Court notes that the current proposed draft of the DSM V, which is scheduled for publication in May 2013, replaces the diagnostic term "mental retardation" with "intellectual disability disorder."

[2] Moeller Report, Def. Ex. 1, at 28.

[3] Campbell Report, Gov't Ex. 2, at 2.

As a result of his diagnosis of mental retardation, both Drs. Campbell and Moeller asked Dennis to complete the Competency Assessment to Stand Trial for Defendants with Mental Retardation (CAST-MR). The CAST-MR was "developed specifically for evaluating adjudicative competence in defendants with mental retardation."[4] The instrument contains three sections: (I) Basic Legal Concepts, which is designed to assess the defendant's knowledge of the trial process; (II) Skills to Assist Defense, which tests the defendant's understanding of the attorney-client relationship; and (III) Understanding Case Events, which tests the defendant's ability to comprehend the facts underlying a charge and possible consequences. Sections I and II are presented in multiple choice format, and Section III requires written responses from the defendant. A defendant's scores on the CAST-MR are compared to mean group scores to determine competency. The following table summarizes Dennis's scores as compared to the relevant averages:

|  | Dr. Campbell (04-18-12) | Dr. Moeller (12-08-11) | Dr. Moeller (06-25-12) | Mean MR but Competent Score | Mean MR & Incompetent Score |
|---|---|---|---|---|---|
| I. Basic Legal Concepts (25 possible) | 17 points | 23 | 16 | 18.3 | 12.3 |
| II. Skills to Assist Defense (15 possible) | 9 points | 12 | 8 | 10.7 | 8.2 |
| III. Understanding Case Events (10 possible) | 10 points | 4 | 4 | 8.2 | 5.2 |
| **Total Points** | **36** | **39** | **28** | **37.0** | **25.6** |

---

[4] Douglas Mossman et al., *AAPL Practice Guideline for the Forensic Psychiatric Evaluation of Competence to Stand Trial*, 35 J. of the Am. Acad. of Psychiatry & L. S3, S41 (Supp. 2007).

As seen in this table, Dr. Campbell's and Dr. Moeller's initial administration of the CAST-MR placed Dennis at or above the average scores of individuals found competent to stand trial. Dr. Moeller's second administration of the CAST-MR yielded a significantly lower score from Dennis; but during his testimony, Dr. Moeller agreed with the government that he made at least one mistake in scoring Dennis's responses and the government noted additional instances of questionable scoring.[5]

Despite the forgoing similarities, the psychologists reached different conclusions about Dennis's competency to stand trial. After acknowledging that Dennis's case present a close call, Dr. Campbell concluded that Dennis was competent to stand trial. Her report states that, although Dennis does have some intellectual limitations, he "demonstrated an understanding of basic legal concepts and the nature of legal proceedings in general, and an ability to apply this knowledge to the facts of his own case."[6] Dr. Campbell stated that Dennis has not been diagnosed with a mental disorder that impairs his sense of reality or his understanding of his current legal situation. Specifically, Dr. Campbell noted that, when she asked him to attempt to drop a pencil, Dennis immediately related the request to the meaning of "attempt" as applied to the charges against him. Although Dennis could not remember the name of his attorney during administration of the CAST-MR,[7] he did understand Mr. Henry's role in Dennis's case and the importance of working collaboratively with Mr. Henry. Dennis also understood the role of each

---

[5] For example, when asked what he was arrested for, Dennis responded "Attempting to sex traffic"—an accurate statement. But Dr. Moeller only credited Dennis with a half-point score because Dennis initially said "Hmmm?" and Dr. Moeller repeated the question, this time soliciting the correct answer. Progress Note, Gov't Ex. 10, at 8.

[6] Campbell Report, Gov't Ex. 2, at 11.

[7] Dennis was able to recognize Mr. Henry as his attorney during an interview with Dr. Moeller on August 14, 2012. Moeller App'x One, Gov't Ex. 11, at 23.

member of the criminal justice system. He understood the difference between a "guilty" and a "not guilty" plea, and knew that he was facing a sentence of "15 to life" if he were convicted of the crimes charged.[8] From these findings, Dr. Campbell concluded that Dennis was competent to stand trial, but that the Court should take care to slow down future proceedings, repeat information when necessary, and allow frequent breaks for Mr. Henry to converse with Dennis. Dr. Campbell also advised that Mr. Henry spend extra time with Dennis to ensure that he understands the proceedings.

Dr. Moeller disagreed, and recommended that Dennis be found incompetent. Dr. Moeller takes issue with Dr. Campbell's use of certain instruments, claiming that Dennis does not have the reading ability necessary to comprehend the questions.[9] During the hearing, Mr. Henry also questioned the legitimacy of Dr. Campbell's administration of the CAST-MR. Dennis completed a court history questionnaire, which also asks about basic legal concepts, several times before taking the CAST-MR; Mr. Henry contends that Dennis's completion of those surveys prompted correct answers on the CAST-MR. And unlike Dr. Campbell's conclusion that Dennis did not suffer from any disorders in Axis I of the DSM-IV-TR, Dr. Moeller diagnosed Dennis as having Attention Deficit Hyperactivity Disorder based on medical records from Dennis's childhood and the fact that he was easily distracted during their interview. As a result of that "distractability," Dr. Moeller concluded that Dennis would be unable to effectively assist in his own defense.

---

[8] Campbell Report, Gov't Ex. 2, at 12.

[9] The CAST-MR is administered orally, and thus Dr. Moeller's concerns about Dennis's reading ability does not cast doubt over Dennis's scores on that instrument. *See* 12-08-11 CAST-MR, Gov't Ex. 9.

## II. Legal Standard for Competency

A criminal defendant may not stand trial or plead guilty unless he is competent to do so.[10] A defendant is legally competent if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him."[11] For that reason, the court must grant a motion to determine a defendant's mental competency "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[12] The court may then order a psychiatric or psychological evaluation of the defendant, followed by a hearing to determine whether the defendant is competent to stand trial to undergo postrelease proceedings.[13] After such hearing, the court must determine whether the defendant proved, by a preponderance of the evidence, that he presently suffers from a mental disease or defect that renders him incompetent to such an extent that he cannot understand the nature and consequences of the charges against him, nor properly assist in his own defense.[14] A defendant who is found incompetent shall

---

[10] *See Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citations omitted).

[11] *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted).

[12] 18 U.S.C. § 4241(a) (2006).

[13] *Id.* § 4241(b)–(c).

[14] *Id.* § 4241(d); *see also Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996) ("[A] State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence."); *United States v. Smith*, 521 F.2d 374, 377 (10th Cir. 1975) (stating that the defendant bears the burden of proof in a competency hearing).

remain in federal custody and be held in an appropriate facility for a reasonable period of time as is necessary to attain the capacity to permit the proceedings against him to continue.[15]

### III. Analysis

The Court has reviewed the transcripts of Dr. Moeller's interviews with Dennis, the reports and test results submitted by the psychologists, and the testimony presented at the competency hearing. The Court agrees with Dr. Campbell's comment that this presents a close case, but concludes that Dennis cannot meet his burden of proving, by a preponderance of the evidence, that he is incompetent to stand trial.

First, the Court finds it significant that Dennis scored well above the average score of defendants who were found incompetent on two different administrations, by two different professionals, of the CAST-MR. The Court affords little weight to Dr. Moeller's second administration of the test because Dr. Moeller himself admitted that he made errors when calculating Dennis's scores and other subjective scoring decisions seem questionable. And Dennis's higher scores on two of the three administrations mean that, even if Dr. Moeller's second administration was persuasive, that one test does not constitute a preponderance of the evidence. Therefore, the Court finds that Dennis's performance on the CAST-MR supports the doctors' diagnoses of mild mental retardation, but also shows that any impairment is not so profound that Dennis cannot understand the nature and consequences of the charges against him.

Furthermore, the Court is not persuaded by Mr. Henry's assertion that Dr. Campbell's administration of the CAST-MR was tainted by Dennis's earlier completion of the court history questionnaire. Although the subjects tested on both instruments are similar, they are not

---

[15] 18 U.S.C. § 4241(d).

identical. Therefore, Dennis's ability to deliver correct answers on the CAST-MR represents conscious recall of information, regardless of when that information was acquired. Additionally, Dennis's score on Dr. Moeller's initial administration of the CAST-MR—which occurred before Dennis was ever shown the court history questionnaire—was higher than Dennis's score on the administration that followed the court history questionnaires. Moreover, even if Dennis's score on Dr. Campbell's administration of the CAST-MR was inflated by previous exposure to legal terms, Mr. Henry can recreate that increased understanding of the criminal justice system by spending time with his client and explaining events as they proceed.

In addition to Dennis's performance on the CAST-MR, the Court finds Dr. Campbell's report and testimony more credible than Dr. Moeller's.[16] Besides his questionable scoring of the second CAST-MR he administered, the Court struggles to find support for the profound attention and communication deficits represented in Dr. Moeller's report. Reviewing the transcripts of Dr. Moeller's conversations with Dennis, Dennis appears to be responsive to Dr. Moeller's questions. Dennis's syntax and vocabulary sometimes cloud his meaning, and Dr. Moeller often had to repeat a question or ask for more information. But once Dennis explained some of the slang he used or provided a longer response, it was clear is answers appropriately addressed Dr. Moeller's questions. And Dennis provided a long narrative when he explained the events leading to his arrest and fully appreciated the nature and possible consequences of the charges against him.[17]

---

[16] *See United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991) ("In performing its fact-finding and credibility functions, a district court is free to assign greater weight to the findings of experts produced by the Government than to the opposing opinions of the medical witnesses produced by the defendant.").

[17] *See, e.g.*, Moeller App'x One, Gov't Ex. 11, at 31 (describing the entrapment defense and asking, "[H]ow the hell can I attempt to recruit somebody when the female or the cop or whoever, came at me first.")

The Court will not posture on whether Dr. Moeller was correct to diagnosis Dennis with ADHD or address Mr. Henry's analogy implying that individuals with mild mental retardation or ADHD cannot participate in activities more complex than "the repetitive work of a dishwasher."[18] Additionally, the Court will not comment on Dr. Campbell's decision to administer psychological instruments without first ascertaining whether the defendant was capable of understanding them. Regardless of the propriety of any diagnosis of cognitive or behavioral impairment, Dennis did not prove, by a preponderance of the evidence, that any such impairment was so profound as to render him unable to effectively assist Mr. Henry in presenting his defense.

In sum, based on Dennis's scores on the CAST-MR, Dr. Campbell's conclusions that he understood the criminal justice system and his present role within that system, and transcripts of Dennis's conversations with Dr. Moeller, the Court concludes that Dennis is legally competent to stand trial and effectively assist in his own defense. The Court will abide by Dr. Campbell's advice to proceed slowly, repeat information when necessary, and provide an adequate number of recesses to ensure that Dennis understands the proceedings. The Court is confident that both attorneys in this case will make the same effort.

**IT IS ACCORDINGLY ORDERED** this 9th day of October 2012, that Defendant is competent to stand trial and pending proceedings in this case shall recommence forthwith.

**IT IS SO ORDERED**.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[18] Concluding Statements, Doc. 36, at 6.